UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LEO MUHAMMAD,                          )
                                       )
        Petitioner,                    )
                                       )
    vs.                                )        Case No. 4:08CV1709 CDP
                                       )
UNITED STATES OF AMERICA,              )
                                       )
        Respondent.                    )

## MEMORANDUM AND ORDER

Leo Muhammad seeks to vacate, set aside or correct his sentence under 28

U.S.C. § 2255.  Following a jury trial,  Muhammad was convicted of conspiring to

distribute and possess with intent to distribute more than five kilograms of

cocaine.  Criminal Case No. 4:00CR547 CDP.  Muhammad appealed, and the

Eighth Circuit Court of Appeals affirmed his conviction and sentence.  United

States v. Francis, 367 F.3d 805 (8th Cir. 2004).[1]  While Muhammad's petition for

rehearing was pending, three of Muhammad's co-defendants petitioned the United

States Supreme Court for certiorari, which was granted.  See United States v.

Francis, 141 Fed. Appx. 501, 502 (8th Cir. 2005).  The Supreme Court vacated the

Eighth Circuit's opinion as to those defendants and remanded to the appellate

---

[1]The overwhelming evidence of Muhammad's guilt is set out in detail in the Eighth
Circuit's opinion and will not be restated here unless necessary to resolve an issue before me.

court for reconsideration in light of its opinion in <u>United States v. Booker</u>, 543

U.S. 220 (2005).  <u>See</u> <u>Francis</u>, 141 Fed. Appx. at 502-03.  The Court then granted

Muhammad's pending petition for rehearing, remanded all four cases to me for

resentencing, and reinstated its earlier opinion "except as may be inconsistent with

the remand for resentencing under the advisory guideline system as outlined in

<u>United States v. Booker</u>."  <u>Id.</u>  On remand, I treated the guidelines as advisory and

again sentenced Muhammad to 360 months imprisonment.  Muhammad appealed,

and the Eighth Circuit affirmed.  <u>United States v. Francis</u>, 203 Fed. Appx. 751 (8th

Cir. 2006).  Muhammad petitioned the Supreme Court for certiorari, which was

denied.  <u>United States v. Muhammad</u>, 552 U.S. 1016 (2007).

Muhammad then filed the instant § 2255 motion, raising the following eight

grounds for relief:

> 1) The Court violated Muhammad's constitutional right to a fair and
> impartial trial by compelling him to stand trial dressed in prison
> clothes;
>
> 2) The Court erred at sentencing by accepting evidence of
> Muhammad's prior convictions that were not sufficiently proven by
> the government;
>
> 3) The Court erred in failing to give a limiting instruction concerning
> certain 404(b) evidence;
>
> 4) The Court's use of the Allen charge violated Muhammad's Fifth
> and Sixth Amendment rights;

5) The Court violated Muhammad's due process rights by using "guesswork" and adopting the Presentence Report's drug quantity estimates;

6) The Court, and not the jury, unconstitutionally found facts at sentencing to increase Muhammad's sentence;

7) The Court unconstitutionally exposed him to a higher punishment by finding facts at sentencing based on a preponderance of the evidence; and

8) Muhammad's due process rights were violated when the prosecutor refused to dismiss the indictment, which Muhammad claims was based on perjured testimony.

For the reasons that follow, I conclude that the records before me conclusively demonstrate that Muhammad has no right to relief. After careful consideration of all the evidence, I will deny Muhammad's motion without an evidentiary hearing for the reasons that follow.

## Background

On December 7, 2000, Muhammad and twelve others were charged in a one-count indictment with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 and § 841(a)(1). Muhammad and six of his co-defendants were tried jointly in a trial that began on May 1, 2002 and was submitted to the jury on May 21, 2002. On May 24, 2002, the jury returned guilty verdicts against Muhammad and his co-

defendant Robert Francis and not guilty verdicts on three others,[2] but continued to deliberate as to co-defendants Anthony Francis and Germaine Davis. On May 28, 2002, the jury found Germaine Davis guilty, but I declared a mistrial as to co-defendant Anthony Francis after the jury was unable to return a verdict.[3]

## Discussion

A.    *No Evidentiary Hearing is Required*

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Id. (internal quotation marks and citation omitted). Here, when I consider the file as a whole I find that Muhammad's claims are inadequate on their face and conclusively refuted by the record. The motion is denied for the reasons that follow.

---

[2]Jimmy Francis, Willie Ellis, and Tommy Macon.

[3]Anthony Francis was retried and found guilty on August 29, 2002.

- 4 -

B.      *Grounds Previously Decided Adversely to Muhammad*
        *on Appeal Cannot be Relitigated Here*

"It is well settled that claims which were raised and decided on direct appeal

cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Bear

Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003) (internal quotation

marks and citation omitted); see also, Thompson v. United States, 7 F.3d 1377,

1379 (8th Cir. 1993) (citing United States v. Holtzen, 718 F.2d 876, 878 (8th Cir.

1983)).  Here, Grounds 5 through 7 of Muhammad's § 2255 motion were rejected

by the Eighth Circuit on direct appeal and cannot be relitigated here.

Grounds 5, 6, and 7 are related and challenge my finding of facts relative to

sentencing.  In Ground 5 Muhammad alleges that his Fifth Amendment rights

were violated when I used "guesswork" to determine his drug quantity estimates.

In Ground 6, Muhammad argues that his Fifth Amendment rights were violated

when I, not the jury, found facts (specifically, the quantity of drugs attributable to

him) at sentencing.  Similarly, in Ground 7, Muhammad argues that he was

unconstitutionally exposed to a higher punishment when I found facts at

sentencing by a preponderance of the evidence, rather than beyond a reasonable

doubt.

On appeal, the Eighth Circuit rejected the arguments made in Ground 6 of

Muhammad's motion as follows:

> Robert Francis and Muhammad contend that their sentences violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Cotton, 535 U.S. 625 (2002) . . . .
>
> The indictment alleged that defendants' offenses involved in excess of five kilograms of cocaine and were punishable under 21 U.S.C. § 841(b)(1)(A)(ii)(II). This section provides that where the offense involves five kilograms or more of cocaine, the defendant shall be sentenced to a term of imprisonment not less than ten years and not more than life. Because Robert Francis's life sentence and Muhammad's sentence of 360 months were both within the statutory range, the indictment was adequate under Cotton.
>
> At sentencing, the district court set Robert Francis' offense level at 38 under U.S.S.G. § 2D1.1(a)(3), the base level for an offense involving over 150 kilograms of cocaine. Robert Francis contends that his sentence violated Apprendi, because the indictment did not allege, and the jury was not instructed that it must find, that the offense involved in excess of 150 kilograms of cocaine. This Court has specifically rejected the assertion that the jury must make a guideline quantity finding, holding that: Apprendi only applies if the defendant is sentenced above the statutory maximum. It is for the district court to determine the type and amount of drugs involved when determining the applicable sentencing range under the guidelines, so long as the sentence imposed does not exceed that applicable to the offense found by the jury. United States v. Miller, 295 F.3d 824, 827 (8th Cir. 2002) (internal citations omitted).
>
> At the conclusion of the trial, the district court instructed the jury that in order to find the defendants guilty, it must find that their offenses involved more than five kilograms of cocaine. Defendants' sentences were within the statutory maximum for the offense alleged in the indictment and found by the jury. Therefore, we find that defendants' Apprendi challenge is without merit.

Francis, 367 F.3d at 820-21. The Eighth Circuit also rejected the arguments raised

in Grounds 5 and 7 of this motion as follows[4]:

> As we have previously held, the remedial portion of [United States v.
> Booker, 543 U.S. 220 (2005)] permits reliance on facts found by the
> sentencing court under a preponderance of the evidence standard so
> long as those facts are used to sentence under an advisory rather than
> a mandatory Guidelines range. United States v. Johnson, 450 F.3d
> 831, 833 (8th Cir. 2006). We previously affirmed the district court's
> sentencing-related factual findings, and the district court properly
> interpreted the scope of our remand order. On remand, the district
> court was aware of the advisory nature of the Guidelines and
> sentenced the defendants under this advisory regime, thus correcting
> the Sixth Amendment, Booker error.

Francis, 203 Fed. Appx. 751, 753 (8th Cir. 2006). My "sentencing-related factual

findings" were affirmed in the Eighth Circuit's earlier opinion as follows:

> We next consider whether the district court erred in assessing the
> quantity of drugs attributable to each defendant. In jointly-undertaken
> criminal activity, a defendant is accountable for his own conduct as
> well as conduct taken by others that was in furtherance of the activity
> and reasonably foreseeable. U.S.S.G. § 1B1.3(a)(1)(B). This applies
> to drug quantities implicated in a conspiracy. United States v. Frazier,
> 280 F.3d 835, 852 (8th Cir. 2002). In determining drug quantity
> accountability, a district court may rely solely on the testimony of
> cooperating witnesses. United States v. Sarabia-Martinez, 276 F.3d
> 447, 450 (8th Cir. 2002). Drug quantity must be established by a

---

[4]The government incorrectly argues that Muhammad did not raise these arguments on
direct appeal. As noted by the Eighth Circuit, "All defendants [including Muhammad] challenge
the district court's use of facts at sentencing found by the judge under a preponderance of the
evidence standard. All defendants challenge their respective sentences as unreasonable. We
affirm." Francis, 203 Fed. Appx. 751, 753 (8th Cir. 2006). Because Muhammad's claims were
rejected on direct appeal, his motion to amend his § 2255 motion to allege that his counsel was
ineffective for failing to raise these arguments on appeal will be denied as moot.

preponderance of the evidence, and we will reverse only if the district court clearly erred. United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001).

. . .

The district court found that Muhammad was responsible for between 50 and 150 kilograms of cocaine. The evidence introduced at trial supports this finding. Malarie Macon testified that Muhammad was directly involved in five of the trips she made to California. Malarie hauled an estimated eight kilograms per trip, so forty kilograms were attributed to Muhammad for this activity. The district court attributed two kilograms of cocaine to Muhammad for the $40,000 in cash that was seized in the green Cadillac at his home. Muhammad was also responsible for the 8.9 kilograms of cocaine seized from Tommy Macon on November 26, 2000, as he was directly involved in the transportation of those drugs. That brings Muhammad's total to 50.9 kilograms.

In addition, Hargrove testified that he and Harold Watkins made three trips to California. On the first trip, the green Cadillac, which investigators later saw in Muhammad's garage, was loaded with cocaine and ready for Hargrove and Watkins upon their arrival. On the second and third trips, Hargrove and Watkins had direct contact with Muhammad. The district court reasonably attributed the estimated twenty-seven kilograms of cocaine involved in these trips to Muhammad. When combined with the amounts described above, Muhammad's total drug quantity is well over fifty kilograms.

Francis, 367 F.3d at 821, 823 (internal footnote omitted).[5]  Grounds 5, 6, and 7 of

Muhammad's § 2255 motion fail.[6]

_____

[5]The Eighth Circuit also affirmed my decision to increase Muhammad's offense level based on his role in the drug conspiracy. Francis, 367 F.3d at 823-25.

[6]To the extent Muhammad is attempting to argue that he should be allowed to pursue these claims in his § 2255 motion because he now claims a violation of the Fifth Amendment, not the Sixth Amendment as argued before the appellate court, that argument has been squarely rejected by the Eighth Circuit. See United States v. Cruz-Zuniga, 571 F.3d 721, 726 (8th Cir.

C.    *Arguments That Could Have Been Raised on Direct Appeal But Were Not Are Precluded From Review in This § 2255 Proceeding Absent A Sufficient Showing To Avoid the Procedural Bar*

"A collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987) (internal citation omitted). Grounds 1 through 4 and 8 were not raised on direct appeal. If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless the movant can show both (1) a "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains. See Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993); Mathews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).[7]

Muhammad argues that ineffective assistance of counsel precluded him from

---

2009). Whether couched as Fifth or Sixth Amendment violations, Muhammad's constitutional rights were not violated when I determined drug quantity at sentencing by a preponderance of the evidence.

[7]A movant can also avoid procedural default by demonstrating actual innocence. Johnson v. United States, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, a § 2255 movant must show either cause and actual prejudice, or that he is actually innocent.") (internal quotation marks and citations omitted). Actual innocence is a strict standard that generally cannot be met "where the evidence is sufficient to support a conviction on the charged offense." Id. (internal quotation marks and citation omitted).

raising Grounds 1 through 4 and 8 on direct appeal.[8]  The "cause and prejudice"

that must be shown to consider a procedurally defaulted claim may include

ineffective assistance of counsel.  See Becht v. United States, 403 F.3d 541, 545

(8th Cir. 2005).  "Actual prejudice" requires a showing that the alleged error

"worked to his actual and substantial disadvantage, infecting his entire trial with

error of constitutional dimensions." Johnson v. United States, 278 F.3d 839, 844

(8th Cir. 2002) (internal quotation marks and citation omitted).

The Sixth Amendment establishes the right of the criminally accused to the

effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686

(1984).  To state a claim for ineffective assistance of counsel, Muhammad must

prove two elements of the claim.  First, he "must show that counsel's performance

was deficient. This requires showing that counsel made errors so serious that

counsel was not functioning as the counsel guaranteed the defendant by the Sixth

Amendment." Id. at 687.  In considering whether this showing has been

accomplished, "judicial scrutiny of counsel's performance must be highly

deferential."  Id. at 689.  The courts seek to "eliminate the distorting effects of

_____

[8]Although Muhammad does not raise ineffective assistance of counsel directly as a
ground for relief in his § 2255 motion, his later-filed brief argues ineffectiveness "alternatively"
for most of the claims.  Whether I analyze ineffectiveness as grounds for overcoming the
procedural bar or as independent (or "alternative") grounds for relief makes no difference,
because I conclude that counsel was not ineffective.

hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error.   Id.  Second, Muhammad "must show that the deficient performance prejudiced the defense."   Id. at 687.  This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  The court need not address both components if the movant makes an insufficient showing on one of the prongs.  Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995).  As a matter of law, counsel cannot be ineffective for failing to make a meritless argument.   Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994).

Muhammad cannot avoid the procedural default of Grounds 1 through 4 and 8 because his attorney was not ineffective for failing to raise these meritless arguments on appeal.  Even if Muhammad's allegations of ineffective assistance of counsel were sufficient to constitute cause and prejudice to excuse his otherwise procedurally defaulted claims, Muhammad cannot prevail on the merits of his claims for the reasons that follow.

D.    *Ground 1 Fails Because Muhammad Was Not Compelled*
       *to Wear Prison Clothes During Trial*

In Ground 1 of his motion, Muhammad argues that his constitutional rights were violated because he wore prison clothes for the first four days of trial.  On the

first morning of trial, Muhammad's attorney and I had the following exchange on the record:

> COURT: Mr. Trivers, I know there was a problem with the clothing regarding your client this morning.  Has that been satisfactorily resolved?

> MR. TRIVERS: No, Your Honor, because he didn't have clothes here.

> COURT: I need to have you on the record, so you need to step up to the mike.  It's hard to get there from there, isn't it?

> MR. TRIVERS: Your Honor, the clothes that he gave me was -- that I brought this morning were given to me by his cousin who lives here in St. Louis, and I assumed that they were the right size.  I didn't know the size, and he tells me today that all his clothes are in California, and I will have to call his dad and him Federal Express some out.  He has an unusual size, 52.  So it's pretty large.

> MR. HOGAN: I think I can help.  He was staying in St. Louis County. The public defender's office has a room full of clothes for people to wear in court, so they can bring him up and fit him and get him some sizes so he doesn't have to wear jail garb since he is staying in St. Louis County.  He can probably be dressed tomorrow when he gets here.

> COURT: He can't be dressed when he gets here because the marshals don't allow that, but the marshals need to have whatever clothes he wants to wear ahead of time, and not at the very last minute, and if he wants to wear clothes other than jail clothes in court he has to provide them, and maybe you can make arrangements with St. Louis County. Our probation office has some clothes available here, and we were making attempts to get those when you arrived, and what we thought were his clothes had arrived, so I'm not sure if they have any clothes in his size, but why don't you make whatever arrangements you can, Mr. Trivers, and today he will simply have to appear in his jail clothes.

It's for his benefit anyway.  If he wants to wear jail clothes all week, that's fine with me.  This is just something that most defendants, you know -- that's between you and your client, Mr. Trivers, but it's your responsibility to make sure that those are provided to the Marshals Service ahead of time.  They need to have them early in the morning, if not the day before, and I believe everybody else did as previously instructed and brought things early and brought things for tomorrow, so at the lunch hour or whenever perhaps you can do whatever you need to do, and perhaps Mr. Hogan can assist you in getting clothes here so we'll have them for tomorrow, okay?

MR. TRIVERS: Thank you, Your Honor.

"A prisoner may not be compelled to go to trial in prison clothing."  United States v. Rojas, 356 F.3d 876, 879 (8th Cir. 2004) (citing Estelle v. Williams, 425 U.S. 501, 504-05 (1976)).  "A defendant, however, cannot remain silent and willingly be tried in prison clothes and then later claim error."  Smith v. United States, 182 F.3d 1023, 1025 (8th Cir. 1999). "If a defendant does not timely object, he may also have waived his right to appear in civilian dress."  Rojas, 356 F.3d at 879 (internal citation omitted).  "Any objection should be made before any trial proceedings have commenced, so that custodial officers and court authorities are provided with adequate time to make the necessary arrangements."  Id. (internal citation omitted).

Here, Muhammad did not object to appearing for the first four days of trial in prison clothing.  The pretrial order entered several months before trial specifically states: "To avoid delays, street clothes should be delivered to the Marshals Service

- 13 -

the day <u>before</u> they are to be worn by defendant." (emphasis in original, January 9, 2002 Order, paragraph 15, docket #299). Muhammad's family brought clothes to his counsel but those clothes did not fit him. He was given the opportunity to appear for trial in his own clothing, but his family members did not cooperate by providing appropriate attire in a timely manner. Additionally, Muhammad's lawyer was referred to two resources that might have been able to provide civilian clothing. Under these circumstances, Muhammad was not compelled to stand trial in prison clothing in violation of his constitutional right to a fair trial, and Ground 1 of his motion must be denied. <u>See</u> <u>Rojas</u>, 356 F.3d at 879 (defendant not compelled to go to trial in prison clothing where prisoner was given opportunity to appear for trial in civilian clothing but his family did not cooperate by providing him with clothing).[9]

---

[9]Although Muhammad argues "alternatively" that his attorney was ineffective for failing to object or raise this issue on appeal, Muhammad makes this allegation collaterally in an attempt to excuse his procedural default of this claim and not as an independent ground for relief. Therefore, to even obtain consideration of this defaulted claim, Muhammad must show that this alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Johnson</u>, 278 F.3d at 844. Here, Muhammad has made no showing of the actual prejudice required to excuse the procedural default of this claim. Moreover, even if Muhammad had directly raised ineffective of assistance of counsel as a ground for relief, the overwhelming evidence of Muhammad's guilt in this case would make it impossible for him to demonstrate the requisite prejudice under <u>Strickland</u>. Accordingly, Muhammad is not entitled to an evidentiary hearing, and Ground 1 must fail. <u>See</u> <u>Simmons v. Taylor</u>, 195 F.3d 346, 348-49 (8th Cir. 1999).

E.    *Ground 2 Fails Because Certified Records Are Not*
      *Required to Prove Prior Convictions for Sentencing*
      *Purposes*

In Ground 2 of his motion, Muhammad argues that I erred when I relied on

uncertified conviction records to determine his criminal history at sentencing.  Four

prior convictions were listed in Muhammad's Presentence Investigation Report

(PSR) and used to determine Muhammad's criminal history.  The probation officer

testified at sentencing that two of the convictions were not supported by certified

copies of conviction, but she did obtain uncertified copies of the convictions from

the California court file through a probation officer in California.  After hearing all

of the evidence, I held that the "government has by sufficient, reliable evidence,

and by a preponderance of the evidence shown that this defendant in fact has the

convictions listed in the Presentence Report . . . ."

"To resolve a defendant's factual objections related to the application of the

guidelines, the district court may consider 'relevant information without regard to

its admissibility under the rules of evidence applicable at trial, provided that the

information has sufficient indicia of reliability to support its probable accuracy.'"

United States v. Stobaugh, 420 F.3d 796, 803 (8th Cir. 2005) (quoting U.S.S.G. §

6A1.3; citing United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005)).  "While

certified records are generally sufficient to prove prior convictions, they are not

necessary." See Stobaugh, 420 F.3d at 803 (internal citations omitted). Here, it was proper for me to rely upon the probation officer's testimony to calculate criminal history because the testimony was sufficient, reliable evidence of Muhammad's prior convictions. Because this argument is meritless, counsel was not ineffective for failing to raise it on appeal. For these reasons, Ground 2 of Muhammad's § 2255 motion fails.

F.     *Ground 3 Fails Because the Testimony Was Properly*
       *Admitted Without a Limiting Instruction*

In Ground 3, Muhammad argues that I erred by failing to admit Agent Zinselmeier's testimony that he seized about $92,000 from Muhammad at Lambert Airport in St. Louis, Missouri in 1994. Muhammad contends that this testimony was evidence of prior bad acts and was erroneously admitted under Rule 404(b) of the Federal Rules of Evidence, and that I further erred by failing to give a limiting instruction to the jury about the proper consideration of this evidence.

Muhammad's attorney objected to the admission of Zinselmeier's testimony at trial because the incident occurred before the time period alleged in the indictment. In response, the government's attorney argued that the testimony, "although not within the charged part of the testimony, it is part of the conspiracy, and as stated in my opening, it's part of the way their operation worked in the past

and changed because of those responses to law enforcement there." I overruled Muhammad's objections and held that the testimony was admissible and relevant to the conspiracy allegations. I also told the parties that I would consider any limiting instruction proposed by defense counsel, but Muhammad's attorney elected to "wait until it comes in." Muhammad's attorney never asked for or proposed a limiting instruction with respect to Zinselmeier's testimony.

Here, the evidence was properly admitted without a limiting instruction as intrinsic act evidence. In general, evidence of a defendant's crimes not charged in the indictment is not admissible. See Fed. R. Evid. 404(b) ("[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). "However, evidence of other crimes is admissible for the purpose of providing the context in which the crime occurred. We have sometimes called this evidence 'res gestae' or 'intrinsic' evidence." United States v. Forcelle, 86 F.3d 838, 841 (8th Cir. 1996). "[W]hen evidence of other crimes is so blended or connected, with the ones on trial as that proof of one incidentally involves the others; or explains the circumstances thereof; or tends logically to prove any element of the crime charged, it is admissible as an integral part of the immediate context of the crime charged." Id. (internal quotation marks and citation omitted).

Here, Zinselmeier's testimony about the 1994 airport seizure was admissible as intrinsic act evidence because it provided a background and a framework for the conspiracy charged in the indictment. This testimony provided helpful background information about how the conspiracy was formed and also explained the changes in the conspiracy's method of operations. The conspirators began avoiding Lambert Airport and instead began traveling through other cities after encounters with law enforcement personnel, such as the one testified about by Zinselmeier, led to seizures of drug proceeds. Without this evidence, the jury would have been left to speculate about why the operation suddenly began traveling to other cities. For these reasons, Zinselmeier's testimony was relevant background information that was an integral part of the complete story of the charged conspiracy. As such, it was properly admitted into evidence as intrinsic act evidence, and no 404(b) limiting instruction was required. See United States v. Riebold, 135 F.3d 1226, 1229 (8th Cir. 1998) (holding that, when intrinsic act evidence is admitted, "Rule 404(b) is not implicated"). Moreover, because this argument is meritless, counsel was not ineffective for failing to raise it on appeal. For these reasons, Ground 3 of Muhammad's § 2255 motion will be denied.

G.  *Ground 4 Fails Because the Use of the Allen Charge Did*
    *Not Violate Muhammad's Constitutional Rights*

In Ground 4 of his motion, Muhammad contends that the Court's use of the

Allen charge during jury deliberations violated his fifth amendment right to a fair

trial and his sixth amendment right to an impartial jury.  The jury began its

deliberations on May 21, 2002.  On May 22, 2002, at 10:05 a.m. I received a note

from the jury requesting exhibits and testimony.  The note also stated that one juror

was not willing to deliberate and requested that one of the alternate jurors be

permitted to deliberate instead.  After discussing the note with counsel for all

parties, I informed them that I intended to read the first two paragraphs of the Allen

Charge as set out in the Eighth Circuit Model Jury Instructions.  No counsel

objected, so I then read the following to the jury:

> Now, additionally, one of the notes I got indicated that some of you
> are having difficulty discussing the case and deliberating with one
> another.  And what I wanted to tell you is that's normal for jury
> deliberations.  We have got twelve people here.  We don't expect you
> to agree on everything.  We want you to discuss the case with one
> another, and see if you can reach agreement.  And what I told you
> before, and I'm going to tell you this again, it is your duty to consult
> with one another, and to deliberate with a view to reaching an
> agreement, if you can do so without violence to your individual
> judgment.  Of course, you must not surrender your honest conviction
> as to the weight or effect of the evidence solely because of the
> opinions of other jurors, or for the mere purpose of returning a verdict.
> Each of you must decide the case for yourself.  But you should do so
> only after consideration of the evidence with your fellow jurors.  In the

course of your deliberations, you should not hesitate to re-examine
your own views, and to change your opinion if you are convinced that
it is wrong.  To bring twelve minds to a unanimous result, you must
examine the questions submitted to you openly and frankly, with
proper regard for the opinions of others.  And with a willingness to re-
examine your own views, if the deliberations convince you that you
should.[10]

Now, there was a reference to the alternate jurors.  They are here in
case one of you has a family emergency, or gets sick, or, you know,
something happens. I don't want that to happen to any of you. I'm glad
you are all still here.  And I hope we don't have to use those alternates.
But we can't just say, "Well, somebody doesn't agree, we'll put in the
alternate."  You all need to talk to each other and do your best to
decide this case.  And it's up to you.  And you should be guided by the
instructions and the evidence we've given you.

The jury then resumed its deliberations until May 24, 2002 at 9:30 a.m. when I

received another note from the jury, again stating that one juror would not

deliberate.  After discussion with, and the agreement of, all counsel, I gave the

following instruction to the jury:

As I stated in my earlier instructions, it is your duty to consult with
one another and to deliberate with a view to reaching agreement if you
can do so without violence to your individual judgment.  Of course,
you must not surrender your honest convictions as to the weight or
effect of the evidence solely because of the opinions of other jurors, or
for the mere purpose of returning a verdict.  Each of you must decide
the case for yourselves, but you should do so only after consideration
of the evidence with your fellow jurors.  In the course of your
deliberations, you should not hesitate to reexamine your own views

---

[10]This instruction is the first two paragraphs of the Allen Charge in Eighth Circuit Manual
of Model Jury Instructions Criminal Supplemental Instruction 10.02.

- 20 -

and to change your opinion if you are convinced it is wrong. To bring 12 minds to unanimous result, you must examine the questions submitted to you openly and frankly with proper regard for the opinions of others and with a willingness to reexamine your own views. Remember that if in your individual judgment the evidence fails to establish guilt beyond a reasonable doubt, then the defendant should have your vote for a not guilty verdict. If all of you reach the same conclusion, then the verdict of the jury must be not guilty. Of course, the opposite also applies. If in your individual judgment the evidence establishes guilt beyond a reasonable doubt, then your vote should be for a verdict of guilty, and if all of you reach that conclusion, the verdict of the jury must be guilty. As I instructed you earlier, the burden is upon the Government to prove beyond a reasonable doubt every essential element of the crime charged. Finally, remember that you are not partisans, you are judges, judges of the facts. Your sole interest is to seek the truth from the evidence. You are the judges of the credibility of the witnesses and the weight of the evidence. You may conduct your deliberations as you choose, but I suggest your carefully reconsider all the evidence bearing upon the questions before you. You may take all the time you feel is necessary. There is no reason to think that another trial could be tried in a better way, or that a more conscientious, impartial, or competent jury could be selected to hear it. Any future jury must be selected in the same manner and from the same source as you were. If you should fail to agree on a verdict as to any defendant, the case is left open as to that defendant and must be disposed of at some later time. You may, however, reach verdicts on some defendants and not on others. Please go back now and finish your deliberations in a manner consistent with your good judgment as reasonable persons.

At 4:45 p.m. on May 24, 2002, the jury returned verdicts as to five defendants, including a verdict of guilty as to Muhammad. At the jury's request, they resumed their deliberations as to the remaining two defendants (Germaine Davis and Anthony Francis) on the next court day, May 28, 2002. Around 11:30 a.m., the

jury reached a verdict as to Davis, but was unable to reach a verdict as to Anthony Francis.

"An Allen charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." United States v. Ybarra, 580 F.3d 735, 738 (8th Cir. 2009) (internal quotation marks and citation omitted). "Supplemental jury instructions are permissible, so long as they are not coercive." Id. To determine whether a particular Allen charge had an unduly coercive effect, the Court must consider (1) the content of the instruction, (2) the length of deliberation after the Allen charge, (3) the total length of deliberations, and (4) any indicia in the record of coercion or pressure on the jury. United States v. Walrath, 324 F.3d 966, 969 (8th Cir. 2003); United States v. Thomas, 946 F.2d 73, 76 (8th Cir. 1991).

The content of the Eighth Circuit's model Allen charge, which I read to the jury, is not coercive. Ybarra, 580 F.3d at 735; see also United States v. Aldridge, 413 F.3d 829, 832-33 (8th Cir. 2005) (noting that the model charge "has been accepted by this court as non-coercive in content"); United States v. Hagan, 412 F.3d 887, 890 (8th Cir. 2005) ("Model Instruction 10.02 is approved by this court as to content."). Nor was the use of the instruction coercive under the circumstances of this case. Here, the trial lasted from May 1, 2002 to May 21, 2002. I read the supplemental instruction to the jury the first time on May 22,

2002, the day after jury deliberations began. After hearing the instruction, the jury deliberated until the morning of May 24, 2002, when I read the _Allen_ charge. The jury then continued to deliberate throughout the day, returning verdicts on Muhammad and four others at 4:45 p.m. The jury then requested to come back the next court day to continue its deliberations as to the remaining defendants. Finally, on the fifth day of deliberations, the jury reached a verdict as to one of the remaining defendants. Although the jury indicated that it had reached unanimous verdicts on two defendants, it did not disclose the nature of its verdicts, the identity of the defendants, or the number of guilty or not guilty votes for any of the defendants. The total length of deliberations (five days), the extended period of time the jury continued to deliberate after the reading of the charge, and the fact that the jury acquitted some defendants and could not reach a verdict as to another demonstrate that the reading of the _Allen_ charge did not unduly coerce the jury into returning a verdict. Ground 4 of Muhammad's § 2255 motion fails.

H.   _Ground 8 Fails Because the Prosecutor Did Not Present_
     _Perjured Testimony to the Grand Jury_

In his final ground for relief, Muhammad alleges that the prosecutor violated his due process rights because he refused to dismiss the indictment after

"discovering that it was based on perjured testimony."[11]  Ground 8 will be denied

because Muhammad has no evidence that false testimony was presented to the

Grand Jury.  At trial, United States Postal Inspector Dennis Simpson testified that

he believed the identity of the co-conspirator known as "Bird Man" to be Travis

Porter.  This is the same testimony Simpson gave to the Grand Jury.  Muhammad

apparently believes that Simpson's testimony was false because during trial

Timothy Hargrove testified that Bird Man resembled Tommy Macon.  Simpson was

recalled to the stand for cross-examination about Bird Man's identity, and stated

the reasons -- mainly, that Porter kept pigeons in a bird cage in his back yard -- for

his identification of Travis Porter as Bird Man.  The information Simpson testified

about was consistent with the information given to him by Hargrove during the

course of the investigation.  Because Travis Porter and Tommy Macon were

described as similar in appearance, Macon's lawyer argued to the jury in closing

that Hargrove's identification of Macon as Bird Man was a mistake:

> [T]he prosecutor got up and asked if he recognized anybody in the
> courtroom, and he pointed to my client and said, "That's Bird Man."
> That was clearly a misidentification.  Now my client is African

---

[11]In his original motion, Muhammad listed Ground 8 as challenging the Court's denial of a motion to sever his trial from that of two co-defendants.  But in his later-filed briefs, he argues the claim discussed here, and he never again mentions any issue regarding severance.  It appears to me that he has abandoned this claim.  In any event, it was addressed by the Court of Appeals and denied, see Francis, 367 F.3d at 830-31, so I cannot consider it in this § 2255 motion.  See Bear Stops, 339 F.3d at 780.

American male with a shaved head. We know who Bird Man is because Mr. Simpson told us Bird Man is Travis Porter. Do they look alike? I don't know . . . . [I]t was clear, not only from what happened at the misidentification, but from Mr. Simpson's testimony thereafter that Mr. Macon is not Bird Man.

When deciding to acquit Tommy Macon, the jury could have easily chosen to believe the testimony of Simpson, not Hargrove, about the identity of Bird Man. As the Eighth Circuit held on direct appeal, "issues of witness credibility are for a jury to decide . . . ." Francis, 367 F.3d at 820. There is nothing in this record to demonstrate that Simpson testified falsely, in the Grand Jury proceedings or elsewhere, about the identity of Bird Man. Muhammad's argument that he is entitled to habeas relief in Ground 8 of his § 2255 motion is meritless and will be denied.

I.     *I Will Not Issue a Certificate of Appealability*

As Muhammad has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

For all the reasons stated above, Muhammad's §2255 motion will be denied.

**IT IS HEREBY ORDERED** that Leo Muhammad's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that Muhammad's motion to amend his § 2255 motion [#13] is denied as moot.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Muhammad has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of July, 2010.